UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John G. Myers & Cecelia A. Reihl, <br><br> Plaintiffs, <br><br> v. <br><br> BJ's Wholesale Club, Inc., <br><br> Defendant. | Civil Action No. 13-05504-TON <br><br> Removed from the Philadelphia County Court of Common Pleas |

## MOTION FOR REMAND

Pursuant to 28 U.S.C. § 1447(c), Plaintiffs John G. Myers and Cecelia A. Reihl respectfully move this Court to remand this action to the Philadelphia County Court of Common Pleas, and as grounds therefor states:

I.   **Argument Summary.**

1.   The Defendant has failed to establish subject matter jurisdiction by either a legal certainty or a preponderance of the evidence; and

2.   The Defendant admits in its Motion to Dismiss that this Court lacks jurisdiction over the Plaintiffs' claims because "primary jurisdiction over disputes regarding sales tax collection rests with the Pennsylvania Department of Revenue." Def. Mot. at p. 2. The Defendant is judicially estopped from arguing that this Court lacks jurisdiction in its Motion to Dismiss and taking the contrary position on removal. While we contend that there is concurrent jurisdiction between the Department of Revenue and the Court of Common Pleas, that is a determination that the Court of Common Pleas must make, since the Defendant agrees that this Court does not have jurisdiction to do so.

3. Remand is also required under the Tax Injunction Act and the long-standing federal doctrine of comity, which preclude Federal courts from adjudicating controversies, like this one, concerning the proper collection of state and local taxes.

4. Finally, remand is also supported by the long-standing principal that "any doubts about the existence of federal jurisdiction must be resolved in favor of remand." *Nigro v. City of Philadelphia*, CIV.A 10-987, 2010 WL 3419672 (E.D. Pa. Aug. 26, 2010), *citing Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992). *See also Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990) (removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand.").

5. As the Defendant itself has created doubt regarding the existence of federal jurisdiction, remand is proper.

## II. Removal in general.

6. The Defendant has removed this matter under the Class Action Fairness Act (CAFA), codified in 28 U.S.C.A. § 1453, which provides for federal jurisdiction over certain class actions involving diverse parties and damages greater than $5,000,000 in total damages.

7. As a starting point, the removing defendant bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court. *Samuel–Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir.2004); *see also Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir.2006) ("Under CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy is satisfied.") *accord Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir.2007).

8. The removal statute is to be construed strictly in favor of state court jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *accord Nichols v. Harbor Venture,*

*Inc.*, 284 F.3d 857, 861 (8th Cir. 2002) ("Removal statutes must be strictly construed because they impede upon states' rights to resolve controversies in their own courts.").

9. Further, the Third Circuit recognizes that removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987).

### III. **The Defendant's burden of proof.**

10. The Third Circuit applies the preponderance of the evidence standard to complaints that do not plead a specific amount of damages or where jurisdictional facts are in dispute. *See Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir.2007).

11. But under the circumstances in the instant case, where the Plaintiff's complaint specifically alleges a jurisdictional amount less than $5,000,000 (see ¶8), the Third Circuit applies a "legal certainty" standard. *Frederico* at 196 ("[t]he party wishing to establish subject matter jurisdiction has the burden to prove by a legal certainty that the amount in controversy exceeds the statutory threshold").[1] See also *Morgan v. Gay*, 471 F.3d 469 (3d Cir. 2006); and *Lowdermilk v. U.S. Bank Nat'l Assc.*, 479 F.3d 994 (9th Cir. 2007). *Lowdermilk* explains the rationale behind applying this stricter standard:

> Second, it is well established that the plaintiff is "master of her complaint" and can plead to avoid federal jurisdiction. *See, e.g., Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Valles v. Ivy Hill Corp.*, 410

---

[1] BJ's attempts to argue that the Plaintiffs' use of the phrase "upon information and belief" in asserting that the amount in controversy is less than $5,000,000 somehow creates an evidentiary dispute that entitles it to the lesser preponderance of the evidence standard. The Third Circuit holds otherwise. The Plaintiffs in *Probola v. Long & Foster Real Estate, Inc.*, 486 F. App'x 229 (3d Cir. 2012) similarly pleaded upon information and belief that "the amounts collected…during the class period from class members…is less than $5,000,000." In addressing the evidentiary standard to apply, the *Probola* court simply referred to its prior decisions in *Frederico* and *Morgan* and reiterated that the defendant bears the burden of proof. *Id.* at 232.

F.3d 1071, 1075 (9th Cir.2005). Accordingly, subject to a "good faith" requirement in pleading, a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Where the plaintiff has alleged her facts and pled her damages, and there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction. *See id.* at 290, 58 S.Ct. 586. We think that the familiar "legal certainty" standard best captures the proof the defendant must produce. We are joined in this judgment by the Third Circuit, which recently held in a CAFA case, *Morgan v. Gay*, that "[g]ood faith in this context is entwined with the legal certainty test, so that a defendant will be able to remove the case to federal court by showing to a legal certainty that the amount in controversy exceeds the statutory minimum." 471 F.3d at 474 (internal quotation marks omitted).

* * *

Accordingly, we hold that where the plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met.

*Lowdermilk* at 998-1000.

12. *Lowdermilk* notes that while a plaintiff may stipulate that damages are under five million dollars in order to avoid federal jurisdiction, they are not required to do so before the legal certainty standard becomes applicable. *Lowdermilk* at 999, FN5. As explained by the Court: "there are cases in which the plaintiffs cannot anticipate from the outset the value of their case. They are not obligated to overstate their damages to satisfy the defendant's interest in a federal forum, but may plead conservatively to secure a state forum." *Lowdermilk* at 1003. Thus, because the Plaintiff's complaint alleges an amount in controversy of less than $5,000,000, the legal certainty standard applies to the Defendant's removal petition.

13. For this reason, CAFA gives the Defendant a second opportunity to remove the case if it can be later shown that the plaintiff intends to seek recovery of more than $5,000,000. Moreover, under CAFA, BJ's Wholesale Club does not face a one year deadline to remove under 28 U.S.C. § 1453(b). *Lowdermilk* explains that "CAFA's removal provision and the

'legal certainty' rule strike a balance, leaving plaintiff as master of her case, but giving defendants an option of a federal forum <u>at the point when they can prove its jurisdiction</u>." *Lowdermilk* at 1003 (emphasis added).

14. In sum, while the Defendant's removal petition was premature and this case must be remanded now, CAFA does not preclude the Defendant from filing for removal again when and if it can establish federal subject matter jurisdiction.

### IV. <u>The Defendant has failed to meet its evidentiary burden to establish the amount in controversy to a legal certainty or a preponderance of the evidence.</u>

15. Turning to the evidence offered by BJ's Wholesale Club in support of its removal, a comparison to analogous cases demonstrates that BJ's Wholesale Club has not produced evidence which "unambiguously establish[es] federal jurisdiction." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007).

16. The Plaintiffs have alleged that BJ's improperly collected Pennsylvania sales tax on the pre-discount price of products purchased with coupons, instead of the reduced, post-discount price of those products, in certain transactions. In fact, the class definition in Paragraph 26 of the Complaint states:

> 26. Plaintiffs seek to represent on a class-wide basis all persons similarly situated, to wit: <u>All customers</u> of BJ's Wholesale Club's 15 Commonwealth of Pennsylvania stores <u>who were improperly charged and paid sales tax on the full, undiscounted price of products purchased with coupons, rebates, or other discounts, in violation of 61 Pa. Code §33.2.</u>

17. Thus, the only members of the class are those customers "who were improperly charged and paid sales tax on the full, undiscounted price of products purchased with coupons, rebates, or other discounts, in violation of 61 Pa. Code §33.2" and the only transactions that matter are those where BJ's charged "sales tax on the full, undiscounted price of products purchased with coupons, rebates, or other discounts."

18.     Thus, to establish subject matter jurisdiction, BJ's must provide the Court with evidence establishing to a legal certainty that it has collected more than $5 million in sales tax on the full, undiscounted price of products purchased with coupons, rebates, or other discounts or that the customers who were charged sales tax on the undiscounted price of products purchased with coupons have to a legal certainty sustained more than $5 million in total damages. It hasn't provided any evidence of either measure of damages.

19.     BJ's attempted to meet its burden by submitting the declaration of Mickael Benita. In his declaration, Mr. Benita asserts that based on his personal knowledge, on a given day, an average of "8,342 transactions involved members using some kind of discount, coupon, or rebate." Benita Dec. at ¶5. BJ's then multiplies this number by the minimum statutory damages of $100 per claim and adds a $30 attorney's fee to arrive at a figure above $5,000,000.

20.     However, this proffer suffers from a glaring deficiency, and that deficiency mandates remand: BJ's has provided the Court with no evidence that BJ's charged sales tax on the full, undiscounted price of *any* of the 8,342 daily transactions identified by Mr. Benita. Therefore, it has not proved that there are any qualifying transactions or any class members beyond Mr. Myers and Ms. Reihl, the two named plaintiffs.

21.     Mr. Benita's declaration about the total number of customer transactions made with discount coupons provides the court with no relevant information. BJ's doesn't violate the unfair trade practices statute when its customer uses a coupon; <u>it only violates the statute when it taxes that customer on the full, undiscounted price of the product bought using that coupon</u>. Membership in the class is limited to the latter.

22.     BJ's has provided the Court with **no evidence whatsoever** about the number of transactions in which it charged Pennsylvania sales tax on the full, undiscounted price of products bought with coupons. Thus, it has not established by even a preponderance of the

Case 2:13-cv-05504-TON Document 7 Filed 10/21/13 Page 7 of 12

*Myers v. BJ'S Wholesale Club*
*Case No: 13-05504-TON*

evidence, let alone to a legal certainty, that this class consists of anyone other than Jack Myers and Cecelia Reihl, the two named plaintiffs whose individual claims involve less than a dollar in improperly collected sales tax.

23. BJ's Wholesale Club has therefore failed to establish federal subject matter jurisdiction by any relevant standard, and this case should therefore be remanded to state court.

24. Three cases outside this Circuit highlight this distinction between customers and class members, and demonstrate why a defendant must either show that all customers are class members or demonstrate the number of customers that are class members. In *Thomas v. Bank of America Corp.*, 570 F.3d 1280 (11th Cir. 2009), the plaintiff did not allege that all of Bank of America's customers were class members, and Bank of America failed to demonstrate the number of customers that would have been class members, so the Court affirmed the remand.

25. In *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005), another statutory damage case, this one involving the unauthorized sending of advertising faxes, Countrywide admitted it sent over 3800 faxes. At statutory damages of $1,500 per fax, this placed the total damages over five million. While Countrywide didn't admit that what it did was wrong, it did admit that it had engaged in the allegedly wrong behavior over 3,800 times. Here, BJ's Wholesale Club has not admitted to collecting sales tax on the full, undiscounted price of any discounted transaction.

26. The Seventh Circuit in *Brill* explained why placing the burden on the defendant on removal to establish the number of class members "makes practical sense":

> If the burden rested with the proponent of remand, then Countrywide could have removed without making any effort to calculate its maximum exposure, and without conceding that it had faxed thousands of ads. That would have thrown on Brill the burden of showing that Countrywide could not possibly have sent more than 3,333 junk faxes (for if the award can reach $1,500 per fax then it is No. 3,334 that puts the stakes over $5 million). Brill would have no way to show this early in the litigation, and

7
EATON & WOLK PL
2 South Biscayne Boulevard, Suite 3100, Miami, Florida 33131 - Telephone: (305) 249-1640

plaintiffs in other kinds of suits would encounter similar difficulty. When the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with the information-so that the choice between state and federal court may be made accurately-is much to be desired.

*Brill* at 447-448.

27. *Lowdermilk v. U.S. Bank Nat'l Assc.*, 479 F.3d 994 (9th Cir. 2007) undertook the same analysis in affirming a remand:

Defendant provides thin support for how it arrived at these numbers. John M. Burnside, a Human Resource employee of U.S. Bank, filed a declaration asserting that 7,571 employees were terminated in Oregon between January 1, 2000 and April 1, 2006. However, he does not specify how many of these employees were hourly employees using the time sheets at issue; only employees thus situated would qualify as class members. The omission is significant. Assuming all other factors are held constant, if the CAFA minimum of 100 former employees qualified as class members, Plaintiff's claim would be worth only $174,000. Under Defendant's assumptions, the class would require 2,874 former employees to break the $5,000,000 statutory minimum. It is likely that some of these 7,571 former employees would qualify for the class, but is far from clear that 2,874 former employees out of 7,571 qualify.

*Lowdermilk* at 1001. Because the Defendant failed to establish what number of former employees could have been class members, remand was appropriate.

28. And while not mandatory authority, we find the discussions of this issue in *Caufield v. EMC Mortgage Corp.*, 803 F.Supp.2d 519 (S.D. W.Va. 2011) and *Krivonyak v. Fifth Third Bank*, 2009 WL 2392092 (S.D. W.Va. 2009) to be instructive. In *Caufield*, the defendant, like the defendant in the instant case, only established the number of loan customers it had in West Virginia. It did not establish the number of those customers whose loans were serviced in the allegedly illegal manner the named plaintiff experienced. Because it failed to do so, the court remanded the case to state court.

29. In doing so, the court stated:

> In order to demonstrate a basis for federal jurisdiction, the party seeking removal must present facts rather than speculation. *Krivonyak*, 2009 WL 2392092 at *5. Here, the defendant has relied on conjecture to demonstrate that the amount in controversy exceeds $5,000,000. As noted above, even assuming that $13,467.90 is the amount sought by the plaintiff in statutory penalties for the putative class counts alone, there is no evidence before the court to support the defendant's premise that all of the West Virginia loans it has serviced were serviced in the same manner as the named plaintiff's loan. Although this action was brought on behalf of "West Virginia borrowers with loans serviced by the defendant" (Compl. ¶ 1.), the class may only consist of the borrowers whose loans were illegally serviced in the manner alleged in this complaint. Merely multiplying the number of West Virginia loans that the defendant has serviced by the amount the named plaintiff may recover cannot constitute a sufficient basis for removal jurisdiction under CAFA. EMC's calculations are not incorrect; if every loan that EMC identified was in default, and was serviced in the same manner alleged by the plaintiff, it is certainly possible, or even probable that EMC could meet the amount in controversy requirement in statutory penalties alone. You cannot multiply an unknown by an unknown, however; EMC bears the burden of showing by a preponderance of the evidence, beyond mere speculation and conjecture, that the requirement is actually met. The mere possibility that the plaintiff and proposed class could meet that requirement is not enough to give this court jurisdiction.

*Caufield* at 527-528.

30. The court reached the identical conclusion in *Krivonyak*:

> Taking the plaintiffs' argument to an extreme, it is possible that only the named plaintiffs themselves incurred the alleged injury and the other 2200 borrowers have never made a late payment, were never charged multiple late fees, were properly credited all payments, and never had a partial payment returned. Under that scenario, while the class is defined as still having many more people than 100, the total amount in controversy doesn't even surpass $5,000, let alone $5,000,000. On the record before me, it is simply impossible to determine how many people are both within the definition of the class and were damaged in any amount by the alleged unlawful actions of the defendants. Without knowing how many people suffered injury, it is impossible to estimate the amount in controversy.

*Krivonyak* at *6.

31. Similarly, on the record before this Court, it is impossible to determine how many of BJ's Wholesale Club's customers or transactions fall within the class definition. The Defendant has therefore failed to meet its burden to prove, to a legal certainty, or, for that matter, by a preponderance of the evidence, that there are sufficient class members to satisfy the amount in controversy requirements of CAFA.

32. Wherefore, Plaintiffs John G. Myers and Cecelia A. Reihl respectfully move this Court to remand this cause to the Court of Common Pleas.

### V. The Defendant has created doubt about jurisdiction that mandates remand

33. The Defendant admits in their Motion to Dismiss that this Court lacks jurisdiction over the Plaintiffs' claims because "primary jurisdiction over disputes regarding sales tax collection rests with the Pennsylvania Department of Revenue." Def. Mot. at p. 2. The Defendant is judicially estopped from arguing that this Court lacks jurisdiction in its Motion to Dismiss and taking the contrary position on removal. While we contend that there is concurrent jurisdiction between the Department of Revenue and the Court of Common Pleas, that is a determination that the Court of Common Pleas must make, since the Defendant agrees that this Court does not have jurisdiction to do so.

34. It is a long-standing principle that any doubts about the existence of federal jurisdiction must be resolved in favor of remand. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990). Since the Defendant itself has created doubt regarding the existence of federal jurisdiction, remand is appropriate.

### VI. The Tax Injunction Act and the Doctrine of Comity Require Remand

35. Finally, under Pennsylvania law, "once a purchaser pays the seller a tax, whether properly or improperly imposed, that tax effectively becomes Commonwealth property, whether

the seller transfers it to the Commonwealth or holds it in a trust fund for the Commonwealth. *Stoloff v. Neiman Marcus Grp., Inc.*, 2011 PA Super 110, 24 A.3d 366, 373 (Pa. Super. Ct. 2011). This lawsuit is therefore a dispute over Commonwealth taxing regulations and the disposition of Commonwealth property.

36. The Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, precludes federal courts from enjoining the "assessment, levy or collection" of any state tax when there is an adequate state remedy. The long-standing federal doctrine of comity also precludes Federal courts from adjudicating controversies, like this one, concerning the proper collection of state and local taxes. *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) (comity considerations required that IMs' complaint of allegedly discriminatory state taxation … proceed originally in state court, given that an adequate state-court forum was available.)

37. As noted *supra*, Defendant concedes not only that this case will determine the legitimacy Defendant's actions in collecting a state tax, but that an adequate state remedy exists for resolving this dispute. Def. Mot. to Dismiss at 2 ("Plaintiff's claims must be dismissed because primary jurisdiction over disputes regarding sales tax collection rests with the Pennsylvania Department of Revenue …").

38. Defendant's admission satisfies the only two predicates to invoking the TIA and the doctrine of comity to barring a federal court from hearing claims relating to state taxes: (1) that a state tax is at issue, and (2) an adequate state remedy exists. *Jones v. Butler*, No. 09-03128, 2009 WL 2461885, *3 (E.D. Pa. Aug. 11, 2009).

39. The Third Circuit Court of Appeals has long held that state taxes collected by private parties implicate the TIA and deprive federal district courts of jurisdiction. *Sipe v. Amerada Hess Corp.*, 689 F.2d 396, 402-03 (3d Cir. 1982). Here, the Court faces a claim

regarding a state tax improperly and illegally collected by Defendant. There is no dispute regarding the nature of Pennsylvania's sales tax under the TIA.

40. It is also undisputed that Pennsylvania provides adequate remedies for aggrieved taxpayers to resolve disputes. *Balazik v. County of Dauphin,* 44 F.3d 209, 218 (3d Cir. 1995) ("We hold that Pennsylvania provides a 'plain, adequate and complete' remedy for § 1983 plaintiffs challenging state taxation policies.").

41. Given Defendant's admissions and the clear legal predicates, this Court must remand this case under the TIA and the related doctrine of comity. *Sipe,* 689 F.2d at 403-04.

WHEREFORE, Plaintiffs John G. Myers and Cecelia A. Reihl respectfully move this Court to remand this action to the Philadelphia County Court of Common Pleas. Plaintiffs further respectfully ask the Court to extend the due date for Plaintiffs' response to Defendant's Motion to Dismiss to 10 days after the Court decides this remand motion.

**BOCHETTO & LENTZ, P.C.**

By: s/ George Bochetto
George Bochetto, Esquire
John A. O'Connell, Esquire
*Attorneys for Plaintiffs*
1524 Locust Street
Philadelphia, PA 19102
(215)735-3900

**EATON & WOLK, PL**

By: s/ William Wolk
William Wolk, Esquire
*Attorney for Plaintiffs*
2 South Biscayne Blvd., Ste. 3100
Miami, FL 33131
(305)249-1640