**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| John G. Myers & Cecelia A. Reihl, | : | |
| | : | Civil Action No. 13-05504-TON |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BJ's Wholesale Club, Inc., | : | |
| | : | |
| Defendant. | : | |

---

**DEFENDANT'S MEMORANDUM OF LAW IN**
**OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

**INTRODUCTION**

The Court has jurisdiction over this case under the Class Action Fairness Act ("CAFA"), a form of diversity jurisdiction under 28 U.S.C. § 1332. Pub. L. No. 109-2 (enacted February 18, 2005) (codified at 28 U.S.C. §§ 1332(d), 1453 and 1711-15). Plaintiffs' Motion to Remand should be denied for three principal reasons.

*First*, CAFA jurisdiction applies and supports removal. Plaintiffs apply the wrong legal standard with respect to defendant BJ's Wholesale Club, Inc.'s ("BJ's") burden of establishing federal jurisdiction under CAFA. Moreover, BJ's sufficiently has demonstrated that the amount in controversy in this case exceeds $5 million and, thus, CAFA applies. Plaintiffs do not challenge any other element under CAFA.

*Second*, the Tax Injunction Act does not bar federal jurisdiction in this case, because (1) Plaintiffs are not suing a government entity or instrumentality, and (2) this case does not involve relief to enjoin the collection of what Plaintiffs claim are legal sales taxes, but rather to enjoin amounts collected that purportedly are more than the legal sales tax.

1

*Third*, BJ's merits argument that primary jurisdiction over this case rests with the Pennsylvania Department of Revenue does not limit this Court's jurisdiction under CAFA. Federal courts frequently permit removal and then dismiss cases on the basis that the plaintiffs failed to exhaust administrative remedies.

## PROCEDURAL HISTORY

Plaintiffs filed a Class Action Complaint (the "Complaint") against BJ's in the Philadelphia Court of Common Pleas on August 8, 2013, seeking to recover allegedly overcharged amounts of sales tax that BJ's collected on discounted items.  Plaintiffs claim that BJ's collected sales tax on the full prices of discounted items, but should have collected sales tax on the discounted prices only.  Complaint (D.E. 1-1) at ¶¶ 1, 4-5.  Plaintiffs assert two purported claims, under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*, and for common law unjust enrichment.  Complaint at ¶¶ 56-64.  BJ's timely removed the case to this Court on September 19, 2013, because federal jurisdiction exists under CAFA.  Notice of Removal (D.E. 1).  On October 10, 2013, BJ's filed a Motion to Dismiss, or, in the Alternative, to Stay Plaintiffs' Complaint (the "Motion to Dismiss").  D.E. 6.  On October 21, 2013, Plaintiffs filed the Motion to Remand.  D.E. 7.[1]

---

[1] On November 7, 2013, Plaintiffs filed a "First Amended Class Action Complaint."  D.E. 10.  This filing is legally irrelevant to the Motion to Remand pursuant to Third Circuit precedent. "[T]he nature of plaintiffs' claim[s] must be evaluated, and the propriety of remand decided, on the basis of the record as it stands *at the time the petition for removal is filed*."  *Seawright v. Greenberg*, 233 Fed. Appx. 145, 148 (3d Cir. 2007) (affirming denial of motion to remand) (further recognizing that a "subsequent amendment to the complaint after removal designed to eliminate [a] federal claim will not defeat federal jurisdiction") (citations omitted) (emphasis added); *see also Lasch v. Idearc Media Corp.*, No. 07-4039, 2007 U.S. Dist. LEXIS 90479, at *13 (E.D. Pa. Dec. 7, 2007) (denying motion to remand) ("The great weight of authority directs that we measure the amount in controversy based upon Plaintiff's original Complaint, without reference to Plaintiff's subsequent attempt to amend.") (gathering cases).

I.      **CAFA JURISDICTION EXISTS AND SUPPORTS REMOVAL**

Under CAFA, federal district courts have original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any member of a class of plaintiffs is a citizen of a state different from any defendant, and (3) the aggregated amount in controversy exceeds $5 million (exclusive of costs and interest).  28 U.S.C. §§ 1332(d)(2), (d)(5) and (d)(6).  Plaintiffs do not contest the numerosity or "minimal diversity" elements.  Plaintiffs instead focus solely on the amount in controversy element.  This Court should reject Plaintiffs' arguments on the amount in controversy and deny the Motion to Remand because Plaintiffs apply the wrong legal standard, which, in any event, BJ's has met in this case.

A.      **Plaintiffs Apply the Wrong Legal Standard with Respect to BJ's Burden of Establishing the Amount in Controversy for Federal Jurisdiction under CAFA**

Plaintiffs claim in error that "under the circumstances of the instant case, *where the Plaintiffs' complaint specifically alleges a jurisdictional amount less than $5,000,000*," the Third Circuit requires that BJ's establish "to a legal certainty" that the amount in controversy exceeds $5 million for CAFA jurisdiction to apply.  Motion to Remand at ¶¶ 11, 18 (referencing *Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007)) (emphasis added).  Plaintiffs' argument should be rejected for three principal reasons.

*First*, Plaintiffs ignore the United States Supreme Court's recent decision in *Std. Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013).  In *Knowles*, the Supreme Court held that a plaintiff may not avoid federal jurisdiction under CAFA by stipulating, prior to class certification, that the class cannot recover or will not seek damages in excess of $5 million.  *Id.*  As such, *Knowles* has changed the standard of proof discussed in *Frederico* to satisfy CAFA's amount in controversy requirement, by limiting a purported class representative's ability to stipulate below the CAFA threshold.  *See Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975 (9th Cir. 2013) (holding

3

that previous precedent on the "legal certainty" test "has been effectively overruled" by *Knowles*). The preponderance of the evidence standard applies to the proponent of federal jurisdiction where the "legal certainty" test does not. *See* Section I.B., *infra*; *Rodriguez*, 728 F.3d at 981-82.[2]  BJ's has satisfied either burden, as addressed below.

*Second*, even if *Knowles* did not bar Plaintiffs' efforts to evade CAFA jurisdiction by artificially limiting their potential damages, Plaintiffs' argument fails under pre-*Knowles* Third Circuit precedent.  In *Frederico*, *supra*, the Third Circuit clarified its existing case law on the burden of establishing federal jurisdiction under CAFA and specifically reconciled its prior decisions in *Morgan v. Gay*, 471 F.3d 469 (3d Cir. 2006) and *Samuel-Basset v. Kia Motors Am., Inc.*, 357 F.3d 392 (3d Cir. 2004).  The *Frederico* Court held that whether the "legal certainty" burden is borne by the plaintiff or defendant depends on whether the plaintiff "specifically avers" that the amount in controversy is less than $5 million:

> The distinction between a case governed by *Morgan* and a case governed by [] *Samuel-Bassett* is crystal clear.  *Morgan* applies where the complaint specifically avers that the amount sought is less than the jurisdictional minimum.  There, a defendant seeking removal must prove to a legal certainty that plaintiff *can* recover the jurisdictional amount.  By contrast, *Samuel-Bassett* applies where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum.  There, the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount.

507 F.3d at 196-97 (emphasis in original).

---

[2] Plaintiffs also fail to address the potential impact of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, which, *inter alia*, amended the diversity jurisdiction statute such that "removal of [an] action is proper on the basis of an amount in controversy . . . if the district court finds, *by a preponderance of the evidence*, that the amount in controversy exceeds the amount specified in Section 1332(a)."  28 U.S.C. § 1446(c)(2)(B) (emphasis added).  At least one court has held that this amendment applies to actions removed under CAFA.  *See Basham v. Am. Nat. Cnty. Mut. Ins. Co.*, No. 12-4005, 2013 U.S. Dist. LEXIS 152278, at *9-10 (W.D. Ark. Oct. 23, 2013) (amendment applies to CAFA); *but see Sims v. AT&T Mobility Servs. LLC*, No. 12-2702, 2013 WL 753496, at *3 n.2 (E.D. Cal. Feb. 27, 2013) (does not apply to CAFA).

4

Here, contrary to Plaintiffs' argument, their Complaint does *not* sufficiently limit the amount in controversy to under $5 million, and therefore the *Samuel-Bassett* line of authority, not the *Morgan* line, applies.  Plaintiffs allege that "[t]his is an action for damages in excess of $50,000, exclusive of interest, attorney's fees and costs, *but upon present information and belief*, less than $75,000 per individual claimant and *less than $5,000,000 in the aggregate*."  Complaint at ¶ 8 (emphasis added).  Such vague allegations do not trigger the "legal certainty" burden.  For example, in *Lorah v. SunTrust Mortg., Inc.*, No. 08-703, 2009 U.S. Dist. LEXIS 12318 (E.D. Pa. Feb. 18, 2009), this Court placed the "legal certainty" burden on the plaintiffs, because their allegations did not "specifically aver" that the amount in controversy was less than $5 million. In that case, the plaintiffs' complaint stated that "'it is *not certain or likely that* . . . the aggregate amount in dispute . . . will exceed the five million dollar requirement of CAFA.'"  *Id.* at *3, *13-14 (emphasis added).

The *Lorah* Court held that this language was "sufficiently equivocal so as to make the . . . case subject to the *Samuel-Basset* standard rather than the *Morgan* standard."  *Id.* at *14.  This Court further recognized that in order for the "legal certainty" burden to be placed on the removing defendant, the complaint must "'specifically (and not impliedly) and precisely (and not inferentially) state [ ] that the amount sought . . . *shall not* exceed $5 million.'"  *Id.* at *13 (emphasis added) (citation omitted).  In this case, Plaintiffs did not make such an unequivocal statement in their Complaint.  Indeed, Plaintiffs' allegation made "upon present information and belief" is even more equivocal than the plaintiffs' statement in *Lorah*.[3]  Thus, because BJ's

---

[3] Moreover, jurisdictional statements made "upon information and belief" generally are held to be insufficient.  *See*, *e.g.*, *Steckmest v. Farmers Ins. Exchange*, No. 12-35, 2013 U.S. Dist. LEXIS 133723, at *10-11 (D. Mont. Aug. 9, 2013) (addressing CAFA jurisdiction) (recommending denial of motion to remand), *adopted at*, 2013 U.S. Dist. LEXIS 132943 (D. Mont. Sept. 17, 2013); *HSBC Bank USA, N.A. v. Valencia*, No. 09-1260, 2010 U.S. Dist. LEXIS

satisfied its initial burden on each of CAFA's three requirements, including the amount in controversy, this action only could be remanded if *Plaintiffs* demonstrated "to a legal certainty" that they cannot recover $5 million in this case. They have not even attempted to do so.

*Third*, the case law upon which Plaintiffs rely is inapposite. In *Rodriguez*, *supra*, the Ninth Circuit expressly ruled that the decision upon which Plaintiffs primarily rely in their Motion to Remand – *Lowdermilk v. U.S. Bank, N.A.*, 479 F.3d 994 (9th Cir. 2007) (Motion to Remand at ¶¶ 11-13, 27) – is no longer good law. *Rodriguez*, 728 F.3d at 981 ("The reasoning behind *Lowdermilk*'s imposition of the legal certainty standard is clearly irreconcilable with *Standard Fire [v. Knowles.]* We hold that *Standard Fire [v. Knowles]* has so undermined the reasoning of our decision in *Lowdermilk* that the latter has been effectively overruled."). Plaintiffs also mischaracterize the Third Circuit's decision in *Probola v. Long & Foster Real Estate, Inc.*, 486 Fed. Appx. 229 (3d Cir. 2012). Motion to Remand at ¶ 11 n.1. *Probola* does not stand for the proposition that an allegation "upon information and belief" is a "specific averment" for purposes of the legal certainty burden, because in *Probola* the Third Circuit merely summarized the defendant's argument and never decided the substantive arguments at issue. *Id.* at 232 & n.5.

**B.     BJ's Sufficiently Has Established that the Amount in Controversy in this Case Exceeds $5 Million**

Plaintiffs next contend that regardless of whether the burden of proof is "legal certainty" or preponderance of the evidence, BJ's evidence falls short. Motion to Remand at p. 5 (heading). This argument fails because BJ's established that federal jurisdiction exists under CAFA under either standard.

---

11489, at *16-17 (E.D. Cal. Feb. 10, 2010) (addressing diversity jurisdiction); *Med. West Ballas Pharm. Ltd. v. Richie Enters., LLC*, No. 11-108, 2011 U.S. Dist. LEXIS 61159, at *5-6 (E.D. Mo. June 7, 2011) (addressing CAFA jurisdiction).

*First*, BJ's calculations and evidence of the amount in controversy in this case are consistent with Third Circuit precedent.  *See*, *e.g.*, *Frederico*, 507 F.3d at 197-99 (calculating total damages sought by plaintiff, plus attorney's fees, and dividing $5 million threshold by that figure to determine required class members); *Lorah*, 2009 U.S. Dist. LEXIS 12318, at *14-24 (denying motion to remand) (same); *Napoli v. HSBC Mortg. Servs.*, No. 12-222, 2012 U.S. Dist. LEXIS 121204, at *7 (D.N.J. Aug. 27, 2012) (denying motion to remand) ("Because plaintiffs' claims are alleged to be typical of the class, it is reasonable for this Court to simply multiply their purported damages by the number of foreclosures alleged in the Complaint."); *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 484-88 (W.D. Pa. 2009) (denying motion to remand) (gathering cases and recognizing that "[i]f the dollar amount per claim . . . can be determined from the proffered evidence, 'the number of class members will determine the amount in controversy through the operation of simple multiplication.'") (citation omitted).

Plaintiffs allege each of the following in their Complaint:

- "Contrary to Pennsylvania law, when BJ's Pennsylvania customers use discount coupons, BJ's still charges and collects 'sales tax' on the full price of the item before applying the coupon discount."  Complaint at ¶ 5.

- "The Plaintiffs and the members of the putative class all made purchases at the 15 Commonwealth of Pennsylvania BJ's locations. . . ."  *Id.* at ¶ 10.

- The manager of BJ's Downingtown, Pennsylvania store allegedly stated that "Pennsylvania law required [BJ's] to charge sales tax on the full retail price of goods purchased with coupons, and *it was BJ's company policy to do so*."  *Id.* at ¶ 22 (emphasis added).

- "[I]t was *BJ's regular practice* to improperly charge *all customers* tax on the full price of discounted taxable purchases made *in the Commonwealth of Pennsylvania*."  *Id.* at ¶ 25 (emphasis added).

- ". . . *BJ's practice* of improperly charging sales tax on the undiscounted purchase price of products subject to discounts *was statewide, the prospective class size consists of tens of thousands, and probably hundreds of thousands, of members and purchases*."  *Id.* at ¶ 31 (emphasis added); *see also id.*

at ¶¶ 33, 35, 44 (same; further alleging that "BJ's conduct to the members of the class is identical").

- "The Plaintiffs' claims . . . [are] typical of the claims of all members of the prospective class." *Id.* at ¶ 37.

BJ's established in its Notice of Removal that because (1) Plaintiffs allege (at least) $130 in statutory damages and attorney's fees per challenged transaction, and (2) each day BJ's Pennsylvania locations conduct an average of 8,342 challenged transactions, the $5 million amount in controversy is satisfied in less than one week.  D.E. 1 at ¶¶ 18-28; *see also id.* at D.E. 1-1, Exh. C. (Declaration of Mickael Benita) (the "Benita Declr.").[4]  Plaintiffs submit no countervailing evidence and, taken together, Plaintiffs' allegations and BJ's affirmative showing (including the Benita Declr.) sufficiently establishes that the amount in controversy is at least $5 million.

*Second*, Plaintiffs contend that "BJ's has provided the Court with no evidence that BJ's charged sales tax on the full, undiscounted price of *any* of the 8,342 daily transactions identified by Mr. Benita."  Motion to Remand at ¶ 20 (emphasis in original).  What Plaintiffs apparently demand is that BJ's concede aspects of the purported claims against it.  No such concessions are required for BJ's to establish CAFA jurisdiction.  One of the decisions upon which Plaintiffs purport to rely – *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (Motion to Remand at ¶ 25) – expressly recognized as much, holding that "Countrywide did not have to confess liability in order to show that the controversy exceeds the [CAFA] threshold." *See also Margulis v. Resort Rental, LLC*, No. 08-1719, 2008 U.S. Dist. LEXIS 115287, at *13-14

---

[4] As explained in the Notice of Removal, this $130 figure is based on Plaintiffs' purported per-transaction statutory damages under the UTPCPL ($100), plus an attorney's fee recovery of 30% per class member ($30).  D.E. 1 at ¶¶ 20-21, 23.  Multiplying $130 by 8,342 challenged daily transactions results in an amount in controversy exceeding $5 million in only 4.6 days ($5,000,000 / $1,084,460).

(D.N.J. June 30, 2008) (following *Brill*, *supra*, and holding that "[t]o require defendant to provide further information . . . would require defendant to concede aspects of the claim against it") (recommending denial of remand motion), *adopted by*, 2008 U.S. Dist. LEXIS 53728 (D.N.J. July 14, 2008).

BJ's was *required* to accept Plaintiffs' allegations as true for purposes of calculating the amount in controversy.  *See Steckmest*, 2013 U.S. Dist. LEXIS 133723, at *17 (explaining that in the absence of countervailing evidence on the amount in controversy, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims in the complaint'") (citing *Campbell v. Vitran Express, Inc.*, 471 Fed. Appx. 646, 648 (9th Cir. 2012)); *Lewis*, 610 F. Supp. 2d at 484 ("We begin with the determination of the amount it is more likely than not each Class Member could recover if all claims were decided in his or her favor."); *Margulis*, 2008 U.S. Dist. LEXIS 115287, at *14-15. In light of Plaintiffs' allegations, BJ's calculations were based on the average number of daily transactions from (1) its Pennsylvania locations in which (2) some kind of discount, coupon or rebate was used, because BJ's was required to assume that all such transactions were improper. D.E. 1-1, Exh. C (Benita Declr.), at ¶ 5; Complaint at ¶¶ 25, 31, 33, 35, 37; *Steckmest*, 2013 U.S. Dist. LEXIS 133723, at *13-16 (the defendant may extrapolate from allegedly "typical" class representative's claims); *Napoli*, 2012 U.S. Dist. LEXIS 121204, at *7 (same); *Basham*, 2013 U.S. Dist. LEXIS 152278, at *14-16 (same).  This evidence appropriately was tailored and more than sufficient to meet BJ's burden of proof.

*Third*, none of the cases to which Plaintiffs refer supports their CAFA argument.  As explained above, *Lowdermilk*, *supra* (Motion to Remand at ¶ 27), has been overruled, and *Brill*, *supra* (Motion to Remand at ¶ 25), supports BJ's position on CAFA jurisdiction.  *See also Brill*,

427 F.3d at 447 (reversing district court's remand order).  The three remaining cases upon which Plaintiffs rely also are inapposite, given the Complaint's allegations and BJ's competent proof. *See Thomas v. Bank of Am. Corp.*, 570 F.3d 1280, 1282-83 (11th Cir. 2009) (Motion to Remand at ¶ 24), *affirming* 2009 U.S. Dist. LEXIS 5404 (M.D. Ga. Jan. 12, 2009) (defendant calculated amount in controversy based on statewide customer figures, even though plaintiff alleged only a subset of those customers were class members); *Caufield v. EMC Mortg. Corp.*, 803 F. Supp. 2d 519, 526-27 (S.D. W.Va. 2011) (Motion to Remand at ¶ 28) (defendant failed to satisfy the numerosity element, and "as in many cases, the proposed class size is inextricably bound up with the amount in controversy"); *Krivonyak v. Fifth Third Bank*, No. 09-549, 2009 WL 2392092, at *6 (S.D. W.Va. Aug. 4, 2009) (Motion to Remand at ¶¶ 28, 30) (similar to *Caufield*, *supra*, holding that "[w]ithout knowing how many people suffered injury, it is impossible to estimate the amount in controversy").[5]  Unlike the cases cited by Plaintiffs, in this case Plaintiffs specifically concede that "the prospective class size consists of tens of thousands, and probably hundreds of thousands, of members and purchases."  Complaint at ¶ 31.  Thus, the CAFA amount in controversy threshold has been satisfied.  *See* discussion *supra* at 7-8 & note 4.

## II.    THE TAX INJUNCTION ACT DOES NOT APPLY HERE

Plaintiffs' argument that the Tax Injunction Act ("TIA") bars this Court from exercising jurisdiction fails, because (1) Plaintiffs are not suing a government entity or instrumentality, and (2) this case does not involve relief to enjoin the collection of what Plaintiffs claim are legal sales

---

[5] Moreover, in *Krivonyak*, *supra*, the purported class representatives did *not* specifically allege that the defendants' alleged actions were part of a statewide, standard business practice that applied to all challenged transactions.  *See Krivonyak v. Fifth Third Bank*, No. 09-549 (S.D. W.Va.) (Notice of Removal, D.E. 1-2) (including Complaint and First Amended Complaint). *Caulfield*, *supra*, simply followed the holding in *Krivonyak*.  In contrast, Plaintiffs specifically alleged such a statewide company policy in this case, which allegations BJ's was required to accept as true at this stage.  *See* discussion *supra* at 7-9.

taxes, but rather to enjoin amounts collected that are purportedly more than the legal sales tax.

*See* Motion to Remand at ¶¶ 3, 35-41; Complaint at ¶ 6 (alleging that "[t]he extra money BJ's

collects . . . is not actually sales tax. . . ."). The TIA provides that "[t]he district courts shall not

enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a

plain, speedy and efficient remedy may be had in courts of such State."  28 U.S.C. § 1341.

Neither this statute nor amorphous principles of comity bar federal jurisdiction here.

  *First*, the Seventh Circuit Court of Appeals reversed a district court's application of the

TIA in almost identical circumstances.  In *In re Wal-Mart Stores, Inc.*, No. 09-8039, 2009 U.S.

App. LEXIS 29535 (7th Cir. Nov. 12, 2009), the plaintiff "sought to certify a class of all Wal-

Mart customers, nationwide, who returned merchandise to Wal-Mart and 'received a refund of

sales tax in an amount less than the sales tax originally paid for the returned merchandise.'"  *Id.*

at *1.  The Seventh Circuit held that the TIA did not apply, because the plaintiff "isn't suing the

state or one of its units for a tax refund; *he's suing a retailer for withholding money that it*

*collected from him when he made a purchase*."  *Id.* at *3 (emphasis added).  Therefore, the TIA

did not apply.  *Id.* at *3-4; *see also BellSouth Telecomm'ns, Inc. v. Farris*, 542 F.3d 499, 503 (6th

Cir. 2008) (holding that "[a] ban on enjoining *a State's* tax-collection efforts does not apply to a

law that purports to restrict *a taxpayer's* efforts to collect those costs from others") (further

holding that the terms "assessment, levy or collection" from the TIA address "a State's

'assessment, levy [and] collection' of taxes") (emphasis in original).

  *Second*, the United States Supreme Court has applied the TIA narrowly, recognizing the

limited purposes for which Congress enacted it.  The Supreme Court held that "in enacting the

TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by

pursuing a challenge route other than the one specified by the taxing authority.  Nowhere does

the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration." *Hibbs v. Winn*, 542 U.S. 88, 104-05 (2004) (citation omitted); *see also id.* at 107 (same).  "Specifically, the Senate Report [addressing the TIA's purpose] commented that the Act had two closely related, state-revenue-protective objectives: (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court – usually out-of-state corporations asserting diversity jurisdiction – and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances."  *Id.* at 104; *see also Luessenhop v. Clinton Cty.*, 466 F.3d 259, 265 (2d Cir. 2006) (holding that "dismissing plaintiffs' causes of action because they pertain to state tax administration in the most general sense would be a patent misreading of the TIA").  Neither concern is at issue here.

Indeed, "the only claims the Supreme Court has held barred by the TIA have all involved taxpayers' attempts to avoid paying state taxes or to obtain a refund of taxes paid."  17A-121 MOORE'S FEDERAL PRACTICE – CIVIL, § 121.41[2A][a] (gathering cases); *see also Rago v. City of Pittsburgh*, No. 08-1423, 2010 U.S. Dist. LEXIS 76739, at *14 (W.D. Pa. July 29, 2010) (recognizing same and citing *Hibbs*, *supra*).  This case is fundamentally different.  Plaintiffs do not challenge any of the Department of Revenue's actions with respect to the Commonwealth's 6% sales tax, nor the actions of any other state or local governmental entity.  Instead, Plaintiffs claim that BJ's – a private enterprise – is overcharging its customers amounts that *are not actually taxes*.  *See, e.g.,* Complaint at ¶ 6.  Therefore, the TIA does not apply.

*Third*, the cases upon which Plaintiffs rely again are inapposite.  In *Jones v. Butler*, No. 09-3128, 2009 WL 2461885 (E.D. Pa. Aug. 11, 2009) (Motion to Remand at ¶ 38), the plaintiffs

challenged notices from the City of Chester regarding trash taxes and fees.  The *Jones* plaintiffs specifically "contend[ed] that, if allowed to stand, the collection of fees, penalties and interest contemplated in the Notices would amount to a deprivation of property without due process in violation of the Fourteenth Amendment to the United States Constitution."  2009 WL 2461885, at *3.  Thus, unlike here, the plaintiffs' challenge was to the City's "assessment, levy [and] collection" of taxes, 28 U.S.C. § 1341, and therefore the TIA applied.  2009 WL 2461885, at *4-6.

Likewise, in *Sipe v. Amerada Hess Corp.*, 689 F.2d 396 (3d Cir. 1982) (Motion to Remand at ¶ 39), the plaintiffs "allege[d] that the withholding of a portion of their wages by their employers pursuant to New Jersey's unemployment compensation and temporary disability benefits tax laws violates" federal law.  689 F.2d at 398.  The Third Circuit addressed the TIA and related comity principles *sua sponte*, holding as follows:

> Plaintiffs' argument that this action is one between private parties which does not implicate the comity concerns of the Tax Injunction Act is unpersuasive . . . *Even those claims directed solely to the employers turn on the underlying question of the validity of the state withholding tax system.  Since it is impossible to adjudicate the claims against the employers without first determining the validity of the state tax system, the policy concerns of the Tax Injunction Act are fully implicated.*  Similarly, the damage claims against the employers cannot succeed without the district court in effect rendering a declaratory judgment as to the validity of the state tax system challenged.

*Id.* at 404 (emphasis added).  As a result, the Third Circuit "h[e]ld that the Tax Injunction Act and the related principle of comity precluded the district court from entertaining these actions."  *Id.* at

408.  No such concerns arise in this case.  Plaintiffs ask this Court to scrutinize BJ's practices, not the government's "assessment, levy or collection" of taxes.[6]

    *Fourth*, "[t]he dispositive question in determining whether the TIA's jurisdictional bar applies is whether the plaintiff's action, if successful, would reduce the flow of state tax revenue."  *Pickell v. Sands*, No. 12-373, 2012 U.S. Dist. LEXIS 172772, at *11 (E.D. Cal. Dec. 5, 2012) (rejecting application of the TIA), *adopted at*, 2013 U.S. Dist. LEXIS 7907 (E.D. Cal. Jan. 18, 2013); *see also Hibbs*, 542 U.S. at 106 (observing that "[o]ur prior decisions are not fairly portrayed cut loose from their secure, state-revenue-protective moorings").  Plaintiffs specifically allege that "*[t]he extra money that BJ's collects* under the color of state law – 6% of the difference between the item's full and discounted price – *is not actually sales tax and therefore does not have to be remitted to the state*.  It is as yet unknown what BJ's does with this money."  Complaint at ¶ 6 (emphasis added); *see also id.* at ¶¶ 61-63 (alleging that BJ's has been unjustly enriched by its alleged actions).  Thus, Plaintiffs' own allegations demonstrate that the TIA does not apply.

## III.   BJ'S MERITS ARGUMENT ON PRIMARY JURISDICTION DOES NOT LIMIT THIS COURT'S JURISDICTION UNDER CAFA

    In its Motion to Dismiss, BJ's argued, *inter alia*, that the Department of Revenue has primary jurisdiction over the sales tax dispute alleged in the Complaint.  D.E. 6-2 at 2-3. Plaintiffs attempt to spin this argument as purported evidence of "doubt regarding the existence

---

[6] "Principles of comity" in state tax cases will not produce a result different from a TIA analysis.  *E.g.*, *Sipe*, 689 F.2d at 404 (reaching result "applying either the Tax Injunction Act or the principle of comity"); *Hibbs*, 542 U.S. at 107 n.9 (recognizing that "this Court has relied upon 'principles of comity' . . . to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection").  Thus, because Plaintiffs' argument under the TIA fails, so too does their argument under "principles of comity."  *Id.*

of federal jurisdiction[.]"  Motion to Remand at ¶ 5; *see also id.* at ¶¶ 2, 33-34 (same).  Plaintiffs'

argument should be rejected for two reasons.

    *First*, Plaintiffs' effort to invoke "judicial estoppel" fails.  Motion to Remand at ¶ 2

(contending that BJ's "is judicially estopped from arguing that this Court lacks jurisdiction in its

Motion [to Dismiss] and taking the contrary position on removal").  Judicial estoppel requires,

*inter alia*, bad faith on the party to be estopped.  *See Montrose Med. Group Participating*

*Savings Plan v. Bulger*, 243 F.3d 773, 782 (3d Cir. 2001) (holding that district court abused

discretion in applying doctrine).  No such bad faith is present here, because BJ's has not

prevailed on an argument and then switched its position to gain a tactical advantage.  *Id.* at 782

(". . . if a party's initial position was never accepted by a court or agency, then it is difficult to see

how a later change manifests an 'intent to play fast and loose with the courts'. . . .").

    Moreover, the two positions of the party to be estopped must be "irreconcilably

inconsistent."  *Carroll v. Prosser*, No. 12-2864, 2013 U.S. App. LEXIS 15853, at *9 (3d Cir.

Aug. 1, 2013) (citing *Montrose*, *supra*) (affirming district court's refusal to apply judicial

estoppel).  BJ's two positions – *i.e.*, that "primary jurisdiction" rests with the Department of

Revenue on the merits of Plaintiffs' tax-related allegations, and that CAFA jurisdiction exists in

this Court – are not inconsistent at all, let alone "irreconcilably inconsistent."  BJ's contentions

on primary and CAFA jurisdiction are consistent and, thus, the rule that "any doubts about the

existence of federal jurisdiction must be resolved in favor of remand" does not apply.  Motion to

Remand at ¶ 34.  Here, primary jurisdiction rests with the Pennsylvania Department of Revenue

because Plaintiffs allege that they were overcharged sales tax, and taxpayers have an

administrative remedy with the Department of Revenue when they believe they overpaid sales

tax.  *See* 72 P.S. § 7252; *Stoloff v. Neiman Marcus Group, Inc.*, 24 A.3d 366 (Pa. Super. 2011).[7]
The fact that this Court should make this ruling – as opposed to the Philadelphia Court of
Common Pleas – does not undermine either of BJ's contentions.

     For example, federal courts routinely exercise subject matter jurisdiction over ERISA
matters, only later to hold that administrative action is required before such cases may proceed.
*See*, *e.g.*, *Van Doren v. Capital Research & Mgmt. Co.*, No. 10-1425, 2010 U.S. Dist. LEXIS
138194 (D.N.J. Dec. 30, 2010) (post-removal, granting motion to dismiss for failure to exhaust
administrative remedies); *Shephard v. Aetna Life Ins. Co.*, No. 09-1436, 2009 U.S. Dist. LEXIS
69457 (E.D. Pa. Aug. 7, 2009) (same); *Galinsky v. Bank of Am. Corp.*, No. 09-60, 2009 U.S.
Dist. LEXIS 36043 (D.N.J. Apr. 28, 2009) (same); *Gatti v. W. Pa. Teamsters & Emplrs. Welfare
Fund*, No. 07-1178, 2008 U.S. Dist. LEXIS 28567 (W.D. Pa. Mar. 24, 2008) (same).  Apart from
the ERISA administrative exhaustion context, the doctrine of "ripeness" also may be addressed
after an action is removed to federal court.  *See*, *e.g.*, *Pickett v. Ocean-Monmouth Legal Services,
Inc.*, No. 11-6980, 2012 U.S. Dist. LEXIS 64107 (D.N.J. May 7, 2012) (in Labor Management
Relations Act case, granting post-removal motion to dismiss based on statute of limitations and,
alternatively, unripe claims); *McKenna v. PSS World Med., Inc.*, No. 09-367, 2009 U.S. Dist.
LEXIS 58292 (E.D. Pa. July 9, 2009) (post-removal, granting motion to dismiss based on unripe
employment dispute-related claims); *Chirik v. TD BankNorth, N.A.*, No. 06-4866, 2008 U.S.
Dist. LEXIS 3939 (E.D. Pa. Jan. 18, 2008) (same result in case involving alleged bank
negligence).

     Plaintiffs' argument with respect to "primary jurisdiction" therefore should be rejected.

---

[7] Plaintiffs' reference to *Stoloff* (Motion to Remand at ¶ 35) undercuts any future
argument in response to BJ's Motion to Dismiss that the decision does not apply here.

IV.    **CONCLUSION**

For each of the foregoing reasons, BJ's respectfully requests that this Court deny

Plaintiffs' Motion to Remand.

Respectfully submitted,

/s/ Jeffery A. Dailey
David L. Comerford (Pa. I.D. 65969)
Jeffery A. Dailey (Pa. I.D. 85993)
Matthew R. Varzally (Pa. I.D. 93987)
Natalie Lesser (Pa. I.D. 309334)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Phone: (215) 965-1200
Fax: (215) 965-1210

Dated:  November 7, 2013            Counsel for BJ's Wholesale Club, Inc.

17

<u>**CERTIFICATE OF SERVICE**</u>

I, Matthew R. Varzally, hereby certify that on the 7th day of November, 2013, a true and correct copy of **Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand** was served upon all counsel of record via the Court's ECF system and/or electronic mail.

/s/ Matthew R. Varzally
Matthew R. Varzally

18